**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| **UNDER ARMOUR, INC.** | ) | |
| 1020 Hull Street | ) | |
| Baltimore, Maryland 21230, | ) | CIVIL ACTION NO. |
| | ) | 15-cv-369 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| **SKECHERS U.S.A., INC.** | ) | |
| 228 Manhattan Beach Boulevard | ) | |
| Manhattan Beach, CA 90266, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, Under Armour, Inc. ("Under Armour"), alleges as follows, upon actual

knowledge with respect to itself and its own acts, and upon information and belief as to all other

matters:

**NATURE OF THE ACTION**

1.     This is a civil action for copyright infringement under the Copyright Act, 17

U.S.C. §§ 101 *et seq.* and trade dress infringement, trademark infringement, and unfair

competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and Maryland common law.

Under Armour seeks equitable and monetary relief from Defendant's willful violations of Under

Armour's copyrights and trade dress rights in its proprietary, distinctive, and valuable *Protect*

*This House. I Will.* advertising campaign.

2.     Defendant has distributed and aired its *Skechers Sport Circuit Training*

commercial (the "Infringing Commercial"), which slavishly copies the look and feel of Under

Armour's highly promoted, successful, and recognized *Protect This House. I Will.*

advertisements, including the musical composition/sound recording and visual elements/narrative featured in that series.

## PARTIES

3.      Plaintiff Under Armour is a Maryland corporation with a principal place of business at 1020 Hull Street, Baltimore, Maryland 21230.

4.      Defendant Skechers U.S.A. Inc. ("Skechers") is a Delaware corporation with a principal place of business at 228 Manhattan Beach Boulevard, Manhattan Beach, California 90266.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  Because Under Armour is a citizen of the State of Maryland, Defendant is a citizen of the State of Delaware and/or the State of California, and the matter in controversy exceeds $75,000 exclusive of interest and costs, the Court also has jurisdiction under 28 U.S.C. § 1332.  The Court has supplemental jurisdiction over Under Armour's state-law claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of the same case or controversy.

6.      This Court has general jurisdiction and specific personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting business in Maryland.  Defendant promotes and sells its products to consumers in Maryland and airs the Infringing Commercial, consisting of the trade dress, trademark, and copyrighted material that are the subject of this lawsuit, on broadcast television, through its own website, on third party websites such as *YouTube*, and by other means, to consumers located in Maryland and uses the Infringing Commercial to promote, advertise, and sell its products in Maryland.

7.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Under Armour's claims have occurred and are continuing to occur in this District and the copyright, trade dress, and trademark rights at issue are located in this District, where Under Armour maintains its principal place of business.

## UNDER ARMOUR AND ITS ADVERTISING

8.     Under Armour is one of the world's most successful, popular, and well-known providers of performance apparel, footwear, sporting goods, outdoor apparel and goods, and accessories.  Through Under Armour's innovative use of advanced engineering and technology, it has revolutionized the performance-product industry.  In 2014 alone, Under Armour sold more than $3 billion worth of products.

9.     For years, Under Armour has spent tens of millions of dollars annually advertising and promoting itself and its products to the general public.  Under Armour does so through virtually every available type of media, including but not limited to television, movies, print, and the Internet.

10.     Under Armour's television and movie advertising includes commercials, product placement in popular films and national television programs, coverage of sporting events featuring its branded teams and products, and its own shows, among other means.

11.     Under Armour's Internet and social-media promotions span the web, including banner ads on third-party websites and content on its own website www.underarmour.com; on its *YouTube* channel, https://www.youtube.com/user/underarmour; on its *Facebook* page, www.facebook.com/underarmour; and via its *Twitter* account, www.twitter.com/underarmour, among others.

12.     In addition to its own substantial advertising and promotional activities, Under Armour has received and continues to receive widespread media coverage.

13.     As part of its marketing and branding efforts, Under Amour features variety of hard-working athletes in its advertising.

14.     Under Armour has received numerous awards for the commercial success of its marketing and branding achievements.  In 2014, Under Armour received the prestigious "Marketer of the Year" Award from *Advertising Age* magazine.  Additionally, *Yahoo Finance* named Under Armour the 2014 "Company of the Year."

### A.  The *Protect This House. I Will.* Advertising Campaign

15.     Among Under Armour's inventive advertising campaigns is its *Protect This House. I Will.* campaign.  The first of these 60-second ads debuted during the NFL scouting combine in February 2010.  The ads received media coverage in the *Baltimore Sun*, among other outlets.  *See e.g.,* Kevin Van Valkenburg, *Under Armour Signs Phelps; Swimmer Will Wear Firm's Attire Outside The Pool*, THE BALTIMORE SUN, Feb. 19, 2010, at 2D.  Exhibit A.

16.     The *Protect This House. I Will.* ads feature a number of distinctive visual elements, including close-up images shown in rapid succession of athletes in cavernous gymnasiums and warehouses tackling rigorous physical workouts, such as climbing a pegboard, jumping hurdles, boxing, and whipping heavy ropes.   A sample of still images from the *Protect This House. I Will.* ads, capturing the look and feel of the Under Amour campaign, are reproduced below:





17.     The visual elements of the *Protect This House. I Will.* ads are emphasized by the fact that the audience does not hear the athletes speak during the action.  Instead, the athletes' efforts are backed by a distinctive sound recording featuring an aggressive up-beat tempo, loud bass line, and heavy percussion sounds that emphasizes the athletes' determination, effort, and physical feats.

18.     The three-minute composition and sound recording (the "*Protect This House. I Will.* Composition"), of which a portion is excerpted in each *Protect This House. I Will.* ad, was composed exclusively for Under Armour as a distinctive soundtrack that serves to distinguish Under Armour, its products, and its ads, from others.

19.     As part of its advertising campaign, Under Armour made the complete three-minute *Protect This House. I Will.* sound recording available to consumers as a digital download.

20.     The *Protect This House. I Will.* ads have regularly and extensively aired on numerous television networks throughout the U.S.  In addition, the *Protect This House. I Will.*

ads have been widely promoted on the Internet, including for example, on *YouTube* and

*Facebook*, generating millions of audience impressions.

**B. Copyrights in the *Protect This House. I Will.* Advertisements**

21.     The appearance, selection, coordination, and placement of the audio, visual, and

narrative elements in the *Protect This House. I Will.* ads as a whole, as well as the *Protect This

House. I Will.* Composition, are subject to copyright protection in the United States.

22.     Under Armour is the sole owner of all right, title, and interest in both the *Protect

This House. I Will.* ads and the *Protect This House. I Will.* Composition.

23.     The *Protect This House. I Will.* ads are registered with the United States

Copyright Office and are the subject of United States Copyright Registration Nos. PA 1-927-

481, PA 1-929-593, and PA 1-929-594.

24.     The *Protect This House. I Will.* Composition is registered with the United States

Copyright Office and is the subject of United States Copyright Registration No. SR 754-175.

25.     True and correct copies the four Certificates of Registration issued by the U.S.

Copyright Office are attached as Exhibit B.

26.     A DVD containing Under Armour's *Protect This House. I Will.* ads is submitted

as Exhibit C.

27.     A CD containing Under Armour's *Protect This House. I Will.* Composition is

submitted as Exhibit D.

**C. Trade Dress in the *Protect This House. I Will.* Advertising Campaign and
    Trademark Rights in the Music**

28.     Under Armour's distinctive *Protect This House. I Will.* ads consist of (1) close-up

images shown in rapid succession; (2) of athletes in cavernous gymnasiums and warehouses

(amid gritty surroundings consisting of cracked concrete and worn and/or peeling paint); (3)

6

performing rigorous workouts; (4) amid distinctive music featuring an aggressive up-beat tempo, loud bass line, and heavy percussion sounds, which combine to create a nonfunctional and distinctive trade dress (the "*Protect This House. I Will*. Trade Dress").

29.     Additionally, the music in Under Armour's *Protect This House. I Will*. ads alone constitutes a nonfunctional and distinctive source identifier for Under Armour and its products.

30.     As a result of longstanding and widespread commercial use and publicity, the public has come to recognize the *Protect This House. I Will*. Trade Dress, and its music, and to associate them with a single source, namely, Under Armour.

31.     As a result of the valuable goodwill Under Armour has built in its *Protect This House. I Will*. Trade Dress and its music, and the public's favorable reaction thereto, these rights have become immensely valuable assets and symbols of Under Armour and its innovative, high-quality products.

**DEFENDANT AND ITS WRONGFUL ACTS**

32.     Like Under Armour, Defendant sells athletic shoes and apparel.

33.     Defendant is "a company that uses [its founder's] skill as a practiced knockoff artist to full effect." *See* Melanie Wells, *Sole Survivors*, FORBES, Aug. 6, 2001, at 62, Exhibit E.

34.     Defendant's business model has been described as follows: "Designers at the company quickly 'approximate' styles of sneakers, sandals and loafers soon after they hit the street in New York, London or Amsterdam. They roll out hundreds of designs a year, spotting a fad and getting their version into stores in three months, beating rivals by a month or more." *Id.*

35.     In 2010, Defendant was strongly criticized after introducing a line of shoes called "*Bobs*." According to the *Los Angeles Times*, Defendant's *Bobs* shoes were designed to resemble *Toms Shoes*, a company founded on the idea of donating one pair of shoes to children for every

pair sold.  "Skechers' announcement got it intensely flamed by bloggers who accused the company of merely ripping off the Toms program (and its shoe design), as a marketing stunt. . . ." *See* Michael Hiltzik, *When is charitable giving by firms more of a marketing ploy?*, L.A. TIMES, Nov. 23, 2010, *available at* http://articles.latimes.com/2010/nov/23/business/la-fi-hiltzik-20101123, Exhibit F.

36.     In 2013, Defendant agreed to settle complaints that its advertising falsely suggested that its *Shape-ups* sneakers could help consumers improve muscle tone and lose weight.  As the *New York Times* reported:  "In announcing the settlement, the Federal Trade Commission said that Skechers had particularly overreached in its advertisements by claiming that its shoes, which retailed for $60 to $100 a pair, could help people shed pounds."  *See* Anahad O'Connor, *Skechers Toning Shoe Customers to Get Refund*, N.Y. TIMES, May 16, 2012, *available at* http://well.blogs.nytimes.com/2012/05/16/skechers-toning-shoe-customers-to-get-refund/?_r=0, Exhibit G.

37.     As least as early as June 2014, without Under Armour's authorization or approval, Defendant launched its Infringing Commercial.  A CD containing the Infringing Commercial is submitted as Exhibit H.

38.     Like Under Armour's *Protect This House. I Will.* ads, the Infringing Commercial consists of similarly lit, close-up images shown in rapid succession, of athletes in cavernous warehouses and gymnasiums (amid gritty surroundings consisting of cracked concrete and worn and/or peeling paint) taking on rigorous physical workouts, such as climbing a pegboard, whipping heavy ropes, boxing, and jumping hurdles.  Representative screen shots from the *Protect This House. I Will.* ads and the Infringing Commercial are shown below:

| ***Protect This House. I Will.* Ads** | **Skecher's Infringing Commercial** |
|:---:|:---:|
|  |  |
|  |  |
|  |  |
|  |  |

39.     Like Under Armour's *Protect This House. I Will.* ads, the Infringing Commercial also features music with an aggressive up-beat tempo, loud bass line, and heavy percussion sounds.  The similarities of the music include, but are not limited to, chord progression, melody, tempo, and rhythm.

40.     Given their common elements, discussed above, there is at least a substantial similarity between the *Protect This House. I Will*. Composition and the Infringing Commercial.

41.     Indeed, as one commentator wrote on *YouTube* in response to a question about what music was used in Defendant's advertisement, "Not sure but it sounds like they basically used/copied the same 'I will protect this house – under armour' commercial theme song without the protect this house part of the song."  *See* Exhibit I,

https://www.youtube.com/watch?v=weokaRKcYhA#rpctoken=774997238&_methods=setNotification WidgetSize%2CsetNotificationWidgetHeight%2CsetNotificationText%2ChideNotificationWidget%2CopenSharebox%2ConError%2C_ready%2C_close%2C_open%2C_resizeMe%2C_renderstart&id=I1_1421360133647&parent=https%3A%2F%2Fwww.youtube.com&pfname=

42.     Defendant had virtually limitless creative options for its Infringing Commercial. Numerous other companies sell athletic-related footwear through commercials that do not use the same combination of elements of the *This House. I Will*. Trade Dress or the same music.

43.     Upon information and belief, Defendant had access to Under Armour's *Protect This House. I Will*. ads and Composition at the time Defendant created the Infringing Commercial because the *Protect This House. I Will*. ads and Composition was repeatedly broadcast on television networks throughout the U.S., and has been available online for more than four years, garnering millions of audience impressions online.  The entire *Protect This House. I Will*. Composition was also distributed as a digital download.

44.     Like Under Armour, Defendant distributes its Infringing Commercial on the Internet and on television networks throughout the U.S.  According to *iSpot* metrics, the Infringing Commercial has been broadcast on television in the United States at least 2,500 times

since its release.  *See* Exhibit J.  The Infringing Commercial also has been distributed widely on the Internet, including on Defendant's own website, *YouTube*, and *Vimeo*.

45.     Under Armour discovered Defendant's infringement on or about October 2014 and shortly thereafter objected to Defendants' Infringing Commercial by sending a demand letter to its general counsel.  Exhibit K.  The parties' in-house counsel then spoke once shortly thereafter.  Under Armour followed up several times, and Defendant finally responded on February 5, 2015, refusing to stop distributing the Infringing Commercial.  On February 7, 2015, Under Armour again attempted to resolve the matter without litigation.  Skechers did not respond.

46.     Fully aware of Under Armour's rights, Defendant has acted knowingly, willfully, in reckless disregard of those rights, and in bad faith.

## INJURY TO UNDER ARMOUR AND THE PUBLIC

47.     The Infringing Commercial poaches Under Armour's creative work of authorship and goodwill.  Consequently, Defendant has benefitted unfairly from the reproduction, distribution, and public performance of the Infringing Commercial.

48.     Defendant's use of Under Armour's *Protect This House. I Will*. Trade Dress, and its music, in association with the Infringing Commercial is likely to cause confusion.

49.     Defendant's acts, described above, have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Under Armour.

50.     Defendant's acts, described above, have irreparably injured, and, if permitted to persist, will continue to irreparably injure the public, who has an interest in being free from confusion, mistake, and deception.

## FIRST CLAIM FOR RELIEF
### Direct Willful Copyright Infringement of the *Protect This House. I Will.* Ads

51.    Under Armour repeats and realleges each and every allegation set forth in this Complaint.

52.    The *Protect This House. I Will.* ads are original works of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq.*

53.    Under Armour owns valid and subsisting copyright registrations for the *Protect This House. I Will.* ads.

54.    Defendant had access to the *Protect This House. I Will.* ads and copied the *Protect This House. I Will.* ads without authorization.

55.    The Infringing Commercial is at least substantially similar to the *Protect This House. I Will.* ads.

56.    Defendant violated Under Armour's exclusive copyrights in the *Protect This House. I Will.* ads by reproducing, distributing, and performing the *Protect This House. I Will.* ads without authorization.  Defendant's conduct constitutes direct infringement of Under Armour's exclusive copyright under the Copyright Act in violation of 17 U.S.C. § 106.

## SECOND CLAIM FOR RELIEF
### Direct Willful Copyright Infringement
### of the *Protect This House. I Will.* Composition and Sound Recording

57.    Under Armour repeats and realleges each and every allegation set forth in this Complaint.

58.    The *Protect This House. I Will.* Composition is an original work of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq.*

59.    Under Armour owns a valid and subsisting copyright registration for the *Protect This House. I Will.* Composition.

60.     Defendant had access to the *Protect This House. I Will.* Composition and copied the *Protect This House. I Will.* Composition without authorization.

61.     The soundtrack of the Infringing Commercial is at least substantially similar to the *Protect This House. I Will.* Composition.

62.     Defendant violated Under Armour's exclusive copyrights in the *Protect This House. I Will.* Composition by reproducing, distributing, and performing the *Protect This House. I Will.* Composition without authorization.  Defendant's conduct constitutes direct infringement of Under Armour's exclusive copyright under the Copyright Act in violation of 17 U.S.C. § 106.

**THIRD CLAIM FOR RELIEF**
**Trade Dress and Trademark Infringement**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

63.     Under Armour repeats and realleges each and every allegation set forth in this Complaint.

64.     Under Armour uses its non-functional, distinctive, and unique *Protect This House. I Will.* Trade Dress, and music, to identify and distinguish Under Armour and its products from others.

65.     The *Protect This House. I Will.* Trade Dress and music, are sources of identity associated with Under Armour and are entitled to broad protection.

66.     Defendant's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant, its products, and/or its commercial activities by or with Under Armour, and thus constitute trademark and trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## FOURTH CLAIM FOR RELIEF
### Common Law Trade Dress and Trademark Infringement and Unfair Competition

67.     Under Armour repeats and realleges each and every allegation set forth in this Complaint.

68.     Defendant's actions have caused and are likely to continue to cause confusion, or to cause mistake, or to deceive the public regarding the origin, sponsorship, affiliation, connection, association, or approval of Under Armour's and Defendant's respective products and commercial activities, such that Defendant's acts constitute infringement of the *Protect This House. I Will.* Trade Dress and music trademark, misappropriation of the goodwill in that trade dress and mark, and unfair competition under Maryland common law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Under Armour respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Under Armour respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.     An Order declaring that Defendant's creation and distribution of the Infringing Commercial constitutes copyright and trade dress infringement of the *Protect This House. I Will.* ads, the *Protect This House. I Will.* Composition, the *Protect This House. I Will.* Trade Dress, and the music trademark, as detailed above;

B.     A permanent injunction enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.      From reproducing, making, promoting, offering, distributing, performing,

or otherwise using the Infringing Commercial and/or materials similar to Under

Armour's copyrighted *Protect This House. I Will. ads,* the *Protect This House. I*

*Will.* Composition, *Protect This House. I Will.* Trade Dress, and/or music

trademark;

2.      From representing by any means whatsoever, directly or indirectly, that

Defendant, any products or services offered by Defendant, or any activities

undertaken by Defendant, are associated or connected in any way with Under

Armour or sponsored by or affiliated with Under Armour in any way;

C.      An Order directing Defendant to destroy, delete, disable, and/or remove all

advertisements, promotional materials, and/or any other materials and things that contain, depict,

or bear Defendant's Infringing Commercial or any other work confusingly similar or

substantially similar to Under Armour's *Protect This House. I Will. ads,* the *Protect This House.*

*I Will.* Composition, *Protect This House. I Will.* Trade Dress, and/or music trademark including

but not limited to ceasing the distribution of the Infringing Commercial via any media or

platform;

D.      An Order directing that, within thirty (30) days after the entry of the injunction,

Defendant file with this Court and serve on Under Armour's attorneys a report in writing and

under oath setting forth in detail the manner and form in which Defendant has complied with the

injunction;

E.      An award of actual damages to Under Armour plus Defendant's profits from

infringement in an amount to be determined pursuant to 17 U.S.C. § 504 and other applicable

laws;

15

F.       An Order requiring Defendant to pay Under Armour damages in an amount as yet

undetermined caused by the foregoing acts, and trebling such damages in accordance with 15

U.S.C. § 1117 and other applicable laws;

G.  An Order requiring Defendants to account for and pay to Under Armour any and all

profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C.

§ 1117 and other applicable laws;

H.       An award of attorneys' fees and costs (including prejudgment interest on such

fees) because this is an exceptional case, pursuant to 35 U.S.C. § 505, 15 U.S.C. § 1117, and

other applicable laws;

I.       An Order requiring Defendant to pay Under Armour punitive damages for

trademark infringement and unfair competition under Maryland common law; and

J.       Other relief as the Court may deem appropriate.


Dated:  February 10, 2015                    Respectfully submitted,

Douglas A. Rettew (Bar No. 29815)
Margaret A. Esquenet (Bar No. 27775)
Brian R. Westley (*pro hac vice* pending)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, D.C.  20001-4413
(202) 408-4000 (phone)
(202) 408-4400 (fax)
doug.rettew@finnegan.com
margaret.esquenet@finnegan.com
brian.westley@finnegan.com

**Attorneys for Plaintiff**
**Under Armour, Inc.**